**HENRY TOVMASSIAN, SBN 140388**
**GEORGE D. CROOK, SBN 60889**
LAW OFFICES OF HENRY TOVMASSIAN
14001 Ventura Boulevard
Sherman Oaks, CA 91423
Telephone: (818) 990-7722
Facsimile: (818) 450-3722

Attorneys for Plaintiffs
**MELISSA GORDON** and **ROBERT GORDON**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA GORDON and ROBERT GORDON, <br><br> Plaintiffs, <br><br> v. <br><br> LOS ANGELES UNIFIED SCHOOL DISTRICT, <br><br> Defendant. | CASE NO. 2:18-cv-00919-CAS-JC <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES** <br><br> [Notice Of Motion and Motion and Declarations of Carol A. Sobel, Richard M. Pearl, Marcy J.K. Tiffany, Valerie Vanaman, Henry Tovmassian and George D. Crook Filed Concurrently Herewith] <br><br> DATE: June 10, 2019 <br> TIME: 10:00 a.m. <br> CRTM: 8D |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION.

The Individuals With Disabilities Education Act, 20 U.S.C. § 1400 et seq.("IDEA") requires that school districts provide children with learning disabilities a free appropriate public education ("FAPE").  Parents who believe that a school district is not providing their child a FAPE have the remedy of an "impartial due process hearing" before an administrative law judge ("ALJ"), wherein they may seek relief.  The IDEA provides that parents who prevail in such proceedings may obtain their "reasonable attorneys fees."  That is what plaintiffs are seeking in this case.

They prevailed in a five-day trial against defendant Los Angeles Unified School District ("District") and obtained not only a determination of eligibility for special education and related services under the IDEA for plaintiffs' eleven year old son ("Student"), but also reimbursement of the tuition they paid for Student's attendance at Bridges Academy, a private school designed to address the educational needs of children who are twice exceptional; i.e., possessing high cognition as well as a disability.  Plaintiffs now seek recovery of their attorneys fee in connection with the underlying due process case, as well as attorneys fees and costs incurred in connection with this action.  The accompanying declarations of Henry Tovmassian, George D. Crook, Carol A. Sobel, Marcy J.K. Tiffany, Valerie Vanaman and Richard M. Pearl establish that the fees and costs plaintiffs seek are proportionate and well within the prevailing market rates.

### II.  PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE ATTORNEYS' FEES FOR THE DUE PROCESS HEARING.

At 20 U.S.C. §1415(i)(3)(B), the IDEA provides that a district court "in its discretion may award reasonable attorneys' fees" to the parents of a disabled child who has prevailed in an "action or proceeding" brought under 20 USC §1415.  An "impartial due process hearing" is such a "proceeding," 20 USC §1415(f), and it is

settled law that parents who have prevailed in that arena may be awarded fees. *Lucht v. Molalla River School Dist.,* 225 F.3d 1023, 1026 (9th Cir. 2000); *Kletzelman v. Capistrano Unified School Dist.,* 91 F.3d 68, 70 (9th Cir. 1996). The expectation is that the courts' exercise of their discretion will result in a fee award "unless special circumstances would render such an award unjust." *Abu-Sahyun By and Through Abu-Sahyun v. Palo Alto Unified School Dist.,* 843 F.2d 1250, 1252 (9th Cir. 1988).

The criteria are those set out in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983) for fee claims brought under 42 U.S.C. §1988 and explicitly applied to the IDEA by *Aguirre v. Los Angeles Unified School District*, 461 F.3d 1114, 1121 (9th Cir. 2006). There are three determinations involved: (1) whether the plaintiff was a prevailing party, *Hensley* at 433; (2) "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Id*. at 433, and (3) what should happen if a prevailing plaintiff has succeeded on "only some of his claims for relief." *Id*. at 434.

### A.     Plaintiffs Were Prevailing Parties.

In *Hensley*, the Court approved this standard for determining prevailing party status: "A typical formulation is that 'plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley* at 433, quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-279 (1st Cir. 1978)

There is no doubt that plaintiffs have easily crossed this "statutory threshold." *Hensley* at 433. Plaintiffs' main purpose in filing the underlying complaint for due process on April 24, 2017[1] was to obtain an order from the ALJ that Student was eligible for special education and related services, and for reimbursement of the tuition they paid to Bridges Academy. Plaintiffs achieved

---

[1] See page 1 of ALJ's Decision, a copy of which is attached to the declaration of Henry Tovmassian as Exhibit "5".

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**
- 3 -

both purposes. The ALJ determined that the District failed to offer and provide a FAPE because the District (a) violated its "child find" obligations by failing to timely assess Student[2], and (b) failed to find him eligible for special education pursuant to eligibility categories of Emotional Disturbance and Other Health Impairment.[3] The ALJ ordered that "Student is eligible for special education placement and services, under the eligibility categories of other health impairment and emotional disturbance", and that the "District shall reimburse Parents for the cost of Student's attendance at Bridges Academy for the 2016-2017 school year, in the amount of $42,990."

A determination that a school district denied their child a FAPE and an order to remedy that denial is the greatest victory a parent can expect or obtain in IDEA litigation. As noted by the Ninth Circuit in *Park, ex rel. Park v. Anaheim Union High School Dist.*, 464 F.3d 1025, 1036-1037 (9th Cir. 2006),

> The determination by the Hearing Officer and the district court that Joseph was denied a free and appropriate public education for the 2001-2002 extended school year and for September 2002 through November 2002-even setting aside the other issues on which Appellants prevailed-is the most significant of successes possible under the Individuals with Disabilities Education Act. At the heart of the Act are the requirements that all disabled children receive "a free appropriate public education ... designed to meet their unique needs and prepare them for further education, employment, and independent living," 20 U.S.C. §1400(d)(1)(A), and that the education provided is effective in "ensuring equality of opportunity, full participation,

---

[2] See page 34, ¶32- page 35, ¶36 of ALJ's Decision, a copy of which is attached to the declaration of Henry Tovmassian as Exhibit "5".

[3] See page 35, ¶37- page 37, ¶46 of ALJ's Decision, a copy of which is attached to the declaration of Henry Tovmassian as Exhibit "5".

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**
- 4 -

independent living, and economic self-sufficiency for individuals with disabilities". *Id*. §1400(c)(1)(d)(4).

Indeed, plaintiffs' victory was remarkable for another reason. For many years, the District's policy had been that children were not eligible for special education and related services unless their disabilities negatively effected their academic grades. All of the District's key witnesses recited the same policy at trial. As the ALJ noted, "[a]t hearing, Ms. Carter, Ms. Laucis, Ms. Plat, and Ms. Greene all took the position that a child cannot qualify for special education eligibility if his or her grades are not impacted by a disability. ... [N]one of the witnesses believed that the absences affected Student's ability to access his education because his grades and continued high academic achievement were not affected. ... Ms. Carter recognized that Student's behaviors were disruptive and interfered with his learning in class. ... However, she did not refer Student for a special education assessment after the March 2016 section 504 team meeting, because Student's academic grades were not affected by his behaviors. She opined at hearing that a pupil had to have an academic need to qualify for an IEP. She also stat4ed that if the pupil had some social/emotional deficits but was not a danger to himself or to others, the pupil also would not qualify for an IEP. ... Ms. Carter's belief that a pupil with good grades was not eligible for an IEP, unless a danger to themselves or to others, was voiced by the majority of District staff who testified at hearing."[4]

The ALJ's rejection of the District's policy was quite clear:

> "District's reliance on the fact that Student was able to maintain his grades was misplaced. Lack of academic achievement is not the only factor to consider in determining whether a child qualifies for special education. ... Ms. Laucis, and other District staff and IEP team

---

[4] See page 22, ¶98, and page 11-12, ¶41 of ALJ's Decision, a copy of which is attached to the declaration of Henry Tovmassian as Exhibit "5".

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**
- 5 -

members, incorrectly focused on Student's continued strong academic performances, totally discounting the affect his anxiety had on his ability to attend school.  Their determination that Student was not eligible as a child with an emotional disturbance focused solely on 'academic performance' rather than focusing on Student's overall 'educational performance' as required by statute. ... District's conclusion that Student's emotional disturbance did not affect his access to his education as a whole is contradicted by the fact that Student missed almost 20 percent of classes during the second trimester of the 2015-2016 school year, and missed over 25 percent of classes during the third trimester, primarily because of his school refusal anxiety.  It is incorrect to find that a child can miss school because of a disability but then conclude that his educational performance has not been affected.  If such were the case, school would not be required of any child who could pass tests without attending. ... In addition to academic achievement and attendance at school, educational performance consists of a variety of other components.  These include a pupil's ability to manage his or her time in class; completing assignments and projects; keeping school and homework materials organized; and completing homework.  Student's anxiety interfered with all of these aspects of educational performance except his academic achievement."[5]

The District is now on notice that its policy is contrary to law and must be abandoned.  Thus, this case will benefit many other intelligent children with disabilities whose eligibility for special education and related services would otherwise have not been identified.

---

[5] See page 3, bottom half of page, and page 36, ¶¶38, 40 and 41 of ALJ's Decision, a copy of which is attached to the declaration of Henry Tovmassian as Exhibit "5".

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

- 6 -

### B. The Amount of Hours Expended By Plaintiffs' Attorneys Was Reasonable.

"The starting point for determining a reasonable fee is the 'lodestar' figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate." *Gates v. Deukmejian*, 977 F.2d 1300, 1305 (9th Cir. 1992). In reaching this determination, "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case." *Perkins v. Mobile Housing Board,* 847 F.2d 735, 738 (11th Cir. 1988). To deny compensation "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Id.*

It clearly does not appear that "the time claimed is obviously and convincingly excessive under the circumstances." The time records establish that Plaintiffs' principal attorney, Henry Tomassian, litigated the administrative proceeding with entirely proportional and moderate time expenditures. In order to avoid any duplication of hours, he did not even involve a second attorney until shortly before the trial itself.

### C. The Hourly Rates Requested By Plaintiff's Attorneys Are Reasonable.

In *Davis v. City and County of San Francisco* 976 F.2d 1536 (1992), the Ninth Circuit observed that "[r]easonable fees are thus 'to be calculated according to the prevailing market rates in the relevant community,' with close attention paid to the fees charged by 'lawyers of reasonably comparable skill, experience, and reputation.'" *Id*. at 1545-46, quoting *Blum v. Stenson*, 465 U.S. 886, 895 & n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); also, see 20 U.S.C. §1415(i)(3)(c) and *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir.1987) ("prevailing market rate in the community is indicative of a reasonable hourly rate").

Declarations regarding fees in the community generally, the attorney's usual billing rates, previous fee awards, and salary surveys are routine methods of

proving a reasonable hourly rate. *E.g.*, *U.S. v. City and County of San Francisco*, 748 F.Supp. 1416, 1431, *aff'd. in relevant part sub nom. Davis v. City and County of San Francisco* 976 F.2d 1536, 1547 (1992); *Berberena v. Coler*, 753 F.2d 629-633 (7th Cir. 1985); (1984 *National Law Journal Article*); *Dameron v. Sinai Hospital of Baltimore, Inc.*, 644 F.Supp. 551, 558 (D.Md. 1986) (1985 *Compensation and Benefit Survey Report* published by the Association of Legal Administrators, Los Angeles and Orange County and Beverly Hills Bar Associations); *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. (1995) (upholding use of local Surveys); *Schwarz v. Secretary of Health and Human Services,* 73 F.3d 895, 908 (9th Cir. 1995).

The Court has before it exactly this kind of evidence. Mr. Tovmassian and Mr. Crook have reported their career histories, experience, current billing rates, and previous fee awards, and they have testified to the accuracy of their charges in this case. Finally, the expert declarations of Carol A. Sobel, Richard M. Pearl, Marcy J.K. Tiffany and Valerie Vanaman carefully set out the relevant market rates. The $700.00 an hour and $650.00 sought by Messers Crook and Tovmassian are well below the market rate in the legal community for lawyers of comparable skill, reputation and experience.

### D. There Should Be No Reduction For Claims Upon Which Plaintiffs Did Not Prevail.

The ALJ's decision designates the District as prevailing on some issues and not others. However, this should not result in a reduction in the amount of attorneys fees awarded to the plaintiffs. The *Hensley* Court addressed this scenario. If the claim or claims on which the plaintiff does not prevail are "distinctly different claims for relief that are based on different facts and legal theories [,] ... counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.' *Davis v. County*

*of Los Angeles*, 8 E.P.D. at 5049. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley*, *supra* at 435-436.  But, on the other hand: "In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Id*. at 435.

      That is exactly the case at bar.  There are no distinctly different claims.  All of the claims in the due process complaint filed by plaintiffs are related as they are based on a "common core of facts" and "related legal theories".  All witnesses and documents were relevant to the District's failure to provide Student a FAPE.  Plaintiffs raised different arguments during the underlying due process hearing to show that the District failed to provide FAPE to Student.  The ALJ accepted the plaintiffs' key arguments and found that Student was eligible for special education and related services and that plaintiffs were entitled to reimbursement of the Bridges Academy's annual tuition cost of $42,990.  Simply stated, plaintiffs obtained excellent results and are therefore entitled to recover the requested attorneys fees.  Harkening back to *Hensley*:

> "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation .... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. ... Litigants in good faith may raise alternative legal grounds for a desired

outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, *supra* at 435.

Here the result was "excellent" and plaintiffs should recover the requested attorneys fees. The attorneys fees incurred in connection with the underlying due process proceeding are set forth in Exhibit "F" to the Declaration of Henry Tovmassian.

### III. PLAINTIFFS SHOULD ALSO RECOVER THEIR FEES AND COSTS IN THIS ACTION.

It is black letter law that a fee "award must also include all the time reasonably spent securing their fees." *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 981 (9th Cir. 2008). The fees and costs incurred in this action are set forth in Exhibit "G" to the Declaration of Henry Tovmassian. We respectfully request that those fees and costs be included in the Court's order following the hearing on this motion.

### IV. CONCLUSION.

Plaintiffs seek by this motion **$218,745.00** for their fees in connection with the underlying IDEA due process proceeding. They also seek the sum of $57,165.00 in fees and $517.500 in costs incurred in this action to date. Thus, plaintiffs' total request is in the amount of **$57,682.50**, together with such other fees and costs they incur in this matter in the future.

DATED: March 13, 2019            LAW OFFICES OF HENRY TOVMASSIAN

                                 By:    /s/ Henry Tovmassian
                                 _____
                                 HENRY TOVMASSIAN
                                 Attorney for Plaintiffs
                                 MELISSA GORDON and ROBERT GORDON